[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Equity 96, LLC (Equity), filed these appeals pursuant to General Statutes § 12-117a, contesting the valuation placed upon its property by the assessor for the town of Newington as of the last revaluation date of October 1, 1991. The files were consolidated at the request of the parties. In docket number CV 98 0492466, Equity contests the valuation of its property on the October 1, 1996, 1997, 1998, 1999 and 2000 grand lists. In docket number CV 99 0495197, Equity contests the valuation of its property on the October 1, 1998, 1999 and 2000 grand lists.
As of October 1, 1991, the subject property was the world headquarters of Loctite Corporation. On January 10, 1997, Loctite sold the subject premises to Equity for $1,007,700. The property is located in an industrial park on both sides of North Mountain in the northeastern corner of the town of Newington near the Hartford and West Hartford boundary lines. The property consists of 11.62 acres of land and contains three buildings and five out buildings with a total building area of 139,030 square feet. The Newington Planning and Zoning Commission approved a subdivision of the property on June 24, 1998, creating four parcels on both sides of North Mountain Road. Three of the parcels contain buildings with a mixed use of industrial and office. The fourth parcel is a parking lot serving parcel one, which is 705 North Mountain Road. For the purpose of these appeals, the fourth parcel has been included in the valuation of 705 North Mountain Road.
Parcel 1, known as 705 North Mountain Road, consists of 3.69 acres of land with a frontage on North Mountain Road of 418.61 feet. Parcel I was improved with a 66,944 square foot building used primarily for offices, but also containing laboratories, a cafeteria, a well laid out reception area and rest room facilities. It was built in various stages from 1965 through 1973. The front portion of the building contains two stories, with approximately 16,900 square feet on the second floor. The exterior of the building is of masonry construction with vinyl coated metal panels on the exterior. The center of the building has a small auditorium with tiered seating for about forty people. Heat is produced by a combination of hot water and hot air systems, and air conditioning is provided by CT Page 3518 rooftop units. There is a compressor for the labs and an emergency generator for the building. The building also has a 2500 pound capacity Otis elevator and a 2000 gallon oil tank.
The primary building on parcel 2, known as 711 North Mountain Road, contains a total of 28,730 square feet, constructed in 1965 with an addition constructed in 1989. The newer portion of the building was constructed for use as offices, and the remaining space consisted of labs and manufacturing and storage areas. This building was built into a hill with the office space being on top of the hill and the remaining space being accessed below the hill. There is no elevator. This building has an enclosed loading area with six overhead doors and three dock levelers. The ceiling height in the building varies from nine feet to eighteen feet. The exterior of this building has masonry construction with coated metal panels on the exterior of the upper level. This building has an oil-fired warm air heating system and air conditioning. As of October 1, 1991, the majority of the area was very desirable research space with the remaining space used for manufacturing or storage. The parcel includes two small masonry outbuildings containing 1692 square feet used for storage and waste removal, and a smaller metal outbuilding used for landscaping equipment. Parcel 2 has no direct frontage on North Mountain Road, and access from North Mountain Road is gained through a forty foot easement across an adjoining owner's property.
Parcel 3, known as 683 North Mountain Road, contains three buildings plus a small shed, which has no value. The building to the rear of the site is a special purpose building used to assist in the ground cleanup of an environmental problem created by Loctite's operation. The main building was constructed primarily from 1960 to 1962 with a one story warehouse addition added in 1985. The building was used for offices, laboratories and warehousing. The northeast portion of the building is two stories, with approximately 9500 square feet on the second floor. The exterior of the building was constructed of masonry with vinyl-coated metal panels. This building has hot water heat and air conditioning but no elevator. The total gross area of the building is 43,356 square feet.
Parcel 4 consists of 1.34 acres of land, triangular in shape, located on the east side of North Mountain Road and valued as part of Parcel 1 since it provides parking for 705 North Mountain Road.
The assessor had originally set the fair market value of the entire property as of the revaluation date of October 1, 1991 at $8,212,890. Loctite appealed this valuation and the Board of Tax Review reduced the fair market value to $7,383,270. When Loctite vacated the premises in 1994, the assessor reduced the value of the property by a 20% vacancy factor and set a fair market value, as of October 1, 1991, on the grand CT Page 3519 lists of October 1, 1996 and 1997, of $5,940,080. The assessor increased the fair market value of the subject property, as of October 1, 1991, on the grand lists of October 1, 1998, 1999 and 2000 to $8,436,560 following the purchase of the property by the plaintiff.
The plaintiffs appraiser, Alan Budkofsky, was of the opinion that although the property was sold and divided into four parcels there would be no difference in value whether the subject was appraised as a whole or separately. The defendant's appraiser, Robert J. Mulready, agreed with Budkofsky's opinion.
Budkofsky was of the opinion that the subject property had a fair market value as of the last revaluation date of October 1, 1991 as follows:
 705 North Mountain Road $1,700,000 711 North Mountain Road $ 600,000 683 North Mountain Road $1,000,000
Total Value: $3,300,000
Mulready was of the opinion that the subject property had a fair market value as of the last revaluation date of October 1, 1991 as follows:
 705 North Mountain Road $4,600,000 711 North Mountain Road $1,460,000 683 North Mountain Road $2,165,000
Total Value: $8,225,000
Budkofsky selected the sales comparison approach and the income approach to determine the fair market value of the subject property as of October 1, 1991. Budkofsky gave little weight to the sales approach. His concern was that "[e]ach income producing property has its own characteristics. The numerous differences from one commercial property to the next make the accuracy of the Sales Comparison Approach unreliable under these conditions." (Plaintiff's exhibit A, p. 55.) Budkofsky considered the income approach to be the best indicator of value because the subject property was an income producing property. (Plaintiff's exhibit A, p. 55.) Mulready, on the other hand, considered the sales comparison approach and the income approach to be equally reliable methods to determine the fair market value of the subject. (Defendant's exhibit 1, p. 65.)
Both Budkofsky and Mulready recognize that the highest and best use of the property influences the fair market value of property. Budkofsky states that "[t]he highest and best use of the property as improved is CT Page 3520 its continued office/laboratory/industrial use as subdivided." (Plaintiff's exhibit A, p. 29.) Mulready states that "[t]he facility was 100% occupied by the owner of record as of October 1, 1991 in the Town of Newington. The present improvements contribute value to the property, and as such this use has been considered to be a financially feasible use as improved. Therefore the financially feasible use of the site is continued use as a commercial/industrial facility." (Defendant's exhibit 1, p. 30.) On October 1, 1991, the subject property was owned and occupied by Loctite. Although Budkofsky acknowledges that the subject property was owned and occupied by Loctite and not subdivided until sold by Loctite, he opines that "the property produces enough income to generate a positive return to the land. This is the case even though the property has a very high vacancy rate, which is expected to continue." (Plaintiff's exhibit A, p. 29.) We assume that Budkofsky is referring to a later date than October 1, 1991, since no reference to contract rent was made in his analysis of rentals under the income approach. Although Budkofsky and Mulready considered the highest and best use of the subject on October 1, 1991 to be the existing use of the property by Loctite, we find it difficult to rationalize the use of the subject property on the date of revaluation to be as an income producing property. The difficulty in considering the income approach to determine value in this case is the wide disparity between Budkofsky, who selected a vacancy of 20% and Mulready, who selected a vacancy of 7.5% vacancy. In addition, the rental market data selected by both Budkofsky and Mulready to establish market rent are not closely related to, and therefore not comparables, to the layout of the subject buildings and the location of the Loctite campus in an industrial section of Newington, some distance from major traffic arteries. We find it conceptually difficult to consider the income approach as a means of determining the fair market value of the subject property as it existed on October 1, 1991. We find that the sales approach is the best indicator of value in the present case.
In his sales comparison approach, Budkofsky selected six sales he deemed to be comparable to 705 North Mountain Road, 711 North Mountain Road and 683 North Mountain Road. Of the six sales selected by Budkofsky, we find the first four sales to have merit as comparable sales to the subject since all four had a mixed use of office and manufacturing, dates of construction and dates of sale commensurate with the subject buildings. Sales five and six were 100% office buildings and were not comparable to the subject.
In his sales comparison approach, Mulready selected ten sales. Although Mulready acknowledges that he reviewed thirty to thirty-five sales and selected ten, that none of the ten are identical to the subject but, in his estimation, contribute in estimating the value of the subject. of the ten sales selected by Mulready, we find six sales that we consider to be CT Page 3521 comparable to the subject. The sales that we do not find comparable are sale one, a multi-tenant office building in Glastonbury, sale two, a class A office complex housing Allstate Insurance Company's headquarters in Farmington, sale three, an office building in Rocky Hill, and sale five, a three story office building in Meriden. These four office comparables picked by Mulready are newer, and located in superior commercial/office zones rather than an industrial zone like the subject property. In addition, while 705 North Mountain Road contained mostly office space, it was not used exclusively as an office use, as were these four office comparables selected by Mulready. The sales which we find to be comparable are the sales of property located in industrial/commercial zones.
Budkofsky and Mulready adjusted their comparable sales as to 705, 711 and 683 North Mountain Road properties to arrive at a price per square foot for each property. We deem it appropriate to take the adjusted price per square foot of the sales used by Budkofsky and Mulready that we found comparable and apply the average of those comparables to arrive at value.
As to 683 North Mountain Road, the adjusted price per square foot of the sales selected of Budkofsky and Mulready that we find comparable are as follows:
Budkofsky
 102 Pane Road, Newington $34.78 68 Holmes Road, Newington $36.71 102 Liberty Street, Newington $37.47 20 Holmes Road, Newington $29.76
 Mulready
 900 Wells Road $60.01 124 White Oak Drive $50.46 100 Milk Lane $44.93 101 Locust Street $50.65 141 Locust Street $51.88 200 Locust Street $51.77
We take the average of these ten adjusted sales to arrive at a price per square foot of $44.84. Multiplying the square footage of 683 North Mountain Road of 43,356 by $44.84 per square foot, we arrive at a value of $1,944,083.
Turning to 711 North Mountain Road, we take the adjusted prices per CT Page 3522 square foot of the comparables of Budkofsky and Mulready as follows:
Budkofsky
 102 Pane Road $30.43 68 Holmes Road $30.92 102 Liberty Street $32.36 20 Holmes Road $29.76
 Mulready
 900 Wells Road $60.01 124 White Oak Drive $50.46 100 Milk Lane $44.93 101 Locust Street $50.65 141 Locust Street $51.88 200 Locust Street $51.77
We take the average of these ten adjusted sales to arrive at a price per square foot of $43.32. Multiplying the square footage of 711 North Mountain Road of 28,730 by $43.32 per square foot, we arrive at the value of $1,244,584.
Moving to 705 North Mountain Road, we recognize that Mulready arrived at a comparable sales analysis using the four sales we do not find to be comparable to the subject. We find it appropriate to use Mulready's six sales that we selected as comparable for determining the price per square foot of 683 and 711 North Mountain Road. The four comparables we have selected from Budkofsky for 705 North Mountain Road and six comparables from Mulready are as follows:
Budkofsky
 102 Pane Road $34.78 68 Holmes Road $36.71 102 Liberty Street $39.18 20 Holmes Road $31.74
 Mulready
900 Wells Road $60.01 124 White Oak Drive $50.46 100 Milk Lane $44.93 101 Locust Street $50.65 141 Locust Street $51.88 200 Locust Street $51.77 CT Page 3523
When we combine Mulready's adjusted prices per square foot for the six comparables he used for 683 and 711 North Mountain Road, which we find to also be comparable to 705 North Mountain Road with Budkofsky's adjusted prices per square foot that we find comparable to the subject, we arrive at an average price per square foot of $45.21. Multiplying the square footage of 705 North Mountain Road of 66,944 by $45.21 per square foot, we arrive at the value of $3,026,538.
Based on these findings we determine the fair market value of the subject, as of October 1, 1991 as follows:
 683 North Mountain Road $1,944,083 711 North Mountain Road $1,244,584 705 North Mountain Road $3,026,538
TOTAL VALUE $6,215,205
These tax appeals challenge the fair market value of the subject property as of October 1, 1991 as applied to the grand lists of October 1, 1996, 1997, 1998, 1999 and 2000. For the grand lists of October 1, 1996 and 1997, the assessor had determined that the fair market value of the subject, due to vacancy considerations, was $5,940,080. Since we find the fair market value of the subject to be in excess of the assessor's determination for 1996 and 1997, we do not find the plaintiff to be an aggrieved taxpayer for these two years. The assessor removed the 20% vacancy factor used for the 1996 and 1997 grand lists and reestablished the fair market value of the subject on subsequent grand lists at $8,436,560. As to the grand lists beginning with October 1, 1998, until the next revaluation, we find the fair market value of the subject premises to be $6,215,205.
Accordingly, judgment may enter in favor of the town as to the grand lists of October 1, 1996 and October 1, 1997, and judgment may enter in favor of Equity, for the grand lists beginning with October 1, 1998 until the next revaluation, without costs to either party.
Arnold W. Aronson Judge Trial Referee